IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v.                        )<br>)<br>BRIAN HAROLD KENNEDY,        )<br>)<br>    Defendant.              ) | Civil No. 07-CR-131 |

**M E M O R A N D U M   O P I N I O N**

This matter is before the Court on Defendant's motions to dismiss or elect (Doc. #15); to strike surplusage (Doc. #19); and to suppress evidence (Doc. #20).  For the following reasons, the Court will deny Defendant's motions.

### I. Background

On April 5, 2007, a grand jury returned an eight-count indictment of Brian Harold Kennedy ("Defendant"), charging him with a false statement in connection with the purchase of a firearm, in violation of 18 U.S.C. § 922(a)(6) ("Count I"); false statement to a licensed firearms dealer, in violation of 18 U.S.C. § 924(a)(1)(A) ("Count II"); three counts of possession of firearm and ammunition by a prohibited person, in violation of 18 U.S.C. § 922(g) ("Counts III-V"); aiding and abetting a prohibited person in possession of a firearm, in violation of 18 U.S.C. §§ 2 and 922(g) ("Count VI"); possession of marijuana, in violation of 21 U.S.C. § 844 ("Count VII"); and conspiracy to possess marijuana, in violation of 21 U.S.C. § 846 ("Count

VIII"). The grand jury indictment included the following allegations.

A) <u>Marijuana Use and Firearms</u>

Defendant resides in a townhouse in Centreville, Virginia ("Kennedy home") with his wife, daughter, and until May 8, 2005, his son Michael Kennedy. For the last ten years, Defendant has regularly possessed and used marijuana, and stored quantities of the substance at his home. From early 2005 to May 8, 2006, Michael Kennedy also used marijuana and other controlled substances supplied by Defendant at the Kennedy home. Defendant also possessed an arsenal of firearms, ranging from pistols to AK-47 semi-automatic rifles, and over 2500 rounds of ammunition.

On March 25, 2005 Defendant made a firearm purchase at "All American Guns," a federally licensed firearms dealer in Fairfax, Virginia. Prior to purchase, Defendant completed a federally required Firearms Transaction Record ("Form 4473"). On this form, Defendant falsely answered "no" to a question asking if he was an unlawful user of marijuana. Defendant also unlawfully provided firearms to Michael Kennedy, a known user of marijuana.

B) <u>The Sully Police Station Shootings</u>

At approximately 3:30 p.m. on the afternoon of May 8, 2005, Michael Kennedy left the Kennedy home with seven firearms, including an AK-47 and over 300 rounds of ammunition. Dressed in

-2-

military-style pants, a vest, and a ski-mask, he made his way to the Sully District Police Station,[1] drawing weapons on several bystanders, and carjacking the owners of a Ford truck and Chevy Astro van.  Once in possession of the van, he traveled to the Sully District Police station, arriving at approximately 3:47 p.m.  A few minutes later, he opened fire on police officers, unloading sixty-five rounds of ammunition, killing officer Garbarino and mortally wounding detective Vicky Armel.  The return of gunfire by police officers killed Michael Kennedy, who was pronounced dead at the scene.

   C) <u>The Search</u>

      The police officers at the scene of the shooting found identification on Michael Kennedy's body stating his home address.  The officers were familiar with Michael Kennedy based on prior contacts with him in the preceding three months.  At approximately 4:30 p.m., a Fairfax County police lieutenant spoke to Mrs. Kennedy by phone, who provided no information and terminated the call.  At this time, a Fairfax County police tactical unit responded to the Kennedy home.  No one answered the door, but a younger relative of the Kennedys who had called 911 after learning of the incident arrived at the home and consented to a search of his vehicle.  The police discovered a handgun in

---

[1] The Sully District Police Station is a Fairfax County police station located in the Centreville, Virginia area.

his vehicle.  At approximately 4:50 p.m., the police entered and surveyed the home to see if anyone inside had been injured or killed.  They observed numerous weapons and ammunition, and used a K-9 to determine if explosives were in the home.  No explosives were found, and no evidence was seized during this search.

At 6:00p.m. on that evening, Fairfax County Police Detective Craig Paul ("Paul") drafted an affidavit for a search warrant of the residence.  The affidavit requested a search of the Kennedy residence, first stating that "Michael Kennedy resides at 6200 Prince Way, Centreville, Virginia," and further states that "persons who commit crimes keep the fruits and instrumentalities of their crimes in their primary residence," including electronic evidence of criminal acts stored on computers and other media.  (Def.'s Mot. to Supp. Ex. 1).  Detective Paul reviewed the affidavit with a Commonwealth's attorney, and then met with a Fairfax County magistrate and discussed the situation.  Based upon this affidavit and the meeting with Paul, the magistrate signed a warrant authorizing the search of the Kennedy residence.  The police then conducted a search and found firearms, ammunition, and marijuana.  On May 19, 2006, agents of the Bureau of Alcohol, Tobacco, and Firearms obtained a second search warrant for the Kennedy home, resulting in the seizure of additional firearms, ammunition, and marijuana. The evidence seized during both searches ultimately led to a

grand jury indictment of Defendant on April 5, 2007.  On May 4, 2007, Defendant filed motions: (1) to continue; (2) to dismiss or elect; (3) for exculpatory evidence; (4) for Jencks Material; and (5) to strike surplusage.  On May 7, 2007, Defendant filed a motion to suppress, and on May 23, 2007 the Government filed a motion for leave to file out of time.  Defendant's motion to continue was denied in open Court, and the Government's motion to file out of time was granted.  The parties agreed that no dispute existed regarding the motion for exculpatory evidence, and the Court granted Defendant's motion for early production of Jencks material in part, and ordered production of Jencks material five business days prior to trial.  The remaining motions are currently before the Court.

## II.  Analysis

A) <u>Motion to Dismiss or Elect</u>

1) <u>Counts I and II</u>

Defendant first asks the Court to either dismiss Count I or II as mulitplicitous or require the Government to elect one count and dismiss the other.  "Where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not."  *Blockburger v. United States*, 284

U.S. 299, 304 (1932). Defendant argues that Counts I and II charge identical offenses, and thus violate the *Blockburger* test.

There are clearly two distinct statutory provisions at issue involving the same underlying incident. Both counts relate to a statement made on Defendant's application for purchase of firearms on March 25, 2005. Count I alleges a false statement in connection with the purchase of a firearm, in violation of 18 U.S.C. § 922(a)(6), and Count II a false statement to a licensed firearms dealer, in violation of 18 U.S.C. § 924(a)(1)(A). Thus, to resolve any potential *Blockburger* issues, the Court must examine the offense elements for each statutory provision and determine whether each provision requires proof of a fact which the other does not. *Blockburger,* 284 U.S. at 304.

While the Fourth Circuit has not squarely addressed this issue, a number of other circuits have found specifically that a defendant may be properly charged with violations of 18 U.S.C. § 922(a)(6) and 18 U.S.C. § 924(a)(1)(A) for the same false statements without violating the *Blockburger* test. *See, e.g., United States v. Hawkins,* 794 F.2d 589, 590-91 (11th Cir. 1986); *United States v. Evans,* 848 F.2d 1352 (5th Cir. 1988). In *Evans,* the Fifth Circuit noted that the vast "weight of authority supports the view that sections 922(a)(6) and 924(a) create separate offenses that permit the imposition of cumulative punishment." *Evans,* 848 F.2d at 1363. *See also Hawkins,* 794

F.2d at 590-91; *United States v. Buck,* 548 F.2d 871, 876-77 (9th Cir.); *cf. United States v. Anaya,* 615 F. Supp. 823, 827 (N.D. Ill. 1985)(holding that defendant may be charged with violations of sections 922(a)(6) and 924(a) in indictment even though both offenses related to same conduct, but reserving issue as to whether cumulative punishment is authorized).

This Court agrees with the analyses of these various other courts. 18 U.S.C. § 922(a)(6) requires the Government to prove that the defendant made a false statement material to the lawfulness of the sale of firearms, while 18 U.S.C. § 924(a) does not require the Government to prove this element. Furthermore, § 924(a) requires the Government to prove that the defendant made a false statement related to information required by law to be kept in the records of a federally-licensed firearms dealer. Because this information is not necessarily material to the lawfulness of the sale, § 922(a)(6) does not require proof of this element. *See Evans,* 848 F.2d at 1363. Accordingly, this Court finds that the two statutory provisions create separate offenses that permit the imposition of cumulative punishment, and Defendant's motion will be denied on this ground.

### 2) Counts III, IV, and V

Defendant next argues that Counts III, IV, and V are multiplicitous. While unlawful possession of multiple firearms at the same time typically may only yield one criminal charge,

separate purchases of firearms may yield multiple criminal charges, even if possessed together later.  *See United States v. Dunford,* 148 F.3d 385, 388-90 (4th Cir. 1998); *see also United States v. Washington,* 188 F.3d 505, 1999 WL 668130 at *3 (4th Cir. 1999)(unpublished table opinion).  Thus, separate firearm possession offenses exist if the firearms were acquired, stored, or possessed at different times and places.  *Dunford,* 148 F.3d at 389; *United States v. Mullins,* 698 F.2d 686, 687 (4th Cir. 1983).

The indictment alleges the unlawful acquisition of different firearms on three different dates.[2]  Accordingly, the indictment properly charges three different counts.  Defendant's arguments that *Dunford* was incorrectly decided lack merit, and this Court will deny Defendant's motion.

B) <u>Motion to Strike Surplusage</u>

Federal Rule of Criminal Procedure 7(c)(1) states that a criminal indictment "shall be a plain, concise and definite written statement of the essential facts constituting the offense charged."  The Court has discretion to strike surplusage, defined as "any fact or circumstance set forth in the indictment which is not a necessary ingredient of the offense" from the indictment.  *United States v. Manginen,* 565 F. Supp. 1024, 1025 (E.D. Va.

---

[2] Count III charges Defendant with unlawful possession of an AK-47 from March 25, 2005 to May 8, 2006.  Count IV charges unlawful possession of numerous other firearms and ammunition from February 13, 2006 to May 8, 2006. Count V charges unlawful possession of other firearms and ammunition on May 8, 2006.

1983).  The purpose of this rule is to protect a defendant against prejudicial allegations that are neither relevant nor material to the charges made in an indictment, or not essential to the charge.  *United States v. Poore,* 594 F.2d 39, 41 (4th Cir. 1979).  Defendant asks the Court to strike Paragraph 9 of the General Allegations as surplusage.[3]  However, the Government successfully argues that the gun at issue in Paragraph 9 is relevant to Counts I, II, III, and VI.  Furthermore, the Government states an intent to prove the facts in Paragraph 9 in order to establish Count VI, which alleges that Defendant aided and abetted unlawful firearm possession by his son.  Defendant does not offer any other reason for striking the Paragraph at this time, other than a conclusory statement that it would be prejudicial.  Accordingly, Defendant's motion will be denied at this time, and the Court will revisit the issue during trial.

    C) <u>Motion to Suppress</u>

Defendant moves to suppress the evidence obtained during the searches of the Kennedy home on May 8, 2006 and May 19, 2006.  Defendant argues that (1) the May 8, 2006 affidavit provided to the magistrate failed to provide probable cause to believe that evidence would be found at the Kennedy home; (2) the

---

[3] Paragraph 9 describes a March 3, 2005 trip to All American Guns, during which Michael Kennedy and several friends handled and took photographs with an AK-47 assault rifle.  During that trip, an unnamed friend put a down payment on the AK-47, and picked it up one week later.  The Paragraph also described a trip to a shooting range with his mother and the purchase of ammunition on March12, 2005.

police officers conducting the May 8, 2006 search did not rely in good faith on the warrant; and (3) probable cause for the May 19, 2006 federal search warrant was based upon evidence improperly obtained in the May 8, 2006 search, and thus tainted.

      1) <u>Probable Cause</u>

Defendant challenges both the validity of the warrant and the applicability of the good faith exception.  Probable cause determinations are based on the "totality of the circumstances" of each case.  *Maryland v. Pringle,* 540 U.S. 366 (2003).  Probable cause is found "where the known facts and circumstances are sufficient to warrant a man of reasonable prudence in the belief that contraband or evidence of a crime will be found."  *Ornelas v. United States,* 517 U.S. 690, 696 (1996).  However, the mere fact that a target of search committed a crime does not automatically warrant search of an address.  *See United States v. Lalor,* 996 F.2d 1578, 1582 (4th Cir. 1993).  Rather, the crucial element is whether the affidavit and materials presented to the magistrate could lead to a reasonable belief that the items to be seized will be found in the place to be searched.  *Id.* (citing *Zurcher v. Stanford Daily,* 436 U.S. 547, 556 (1978).  As the Fourth Circuit has held, "the nexus between the place to be searched and the items to be seized may be established by the nature of the item and the normal inferences of where one would likely keep such evidence."  *United*

*States v. Anderson,* 851 F.2d 727, 729 (4th Cir. 1988)(expressly adopting the logic of the Fifth, Sixth, Eighth, and Ninth Circuits).

It is true that, unlike various cases in which courts have found a nexus lacking, the instant warrant was not based on an anonymous tip and the question of residence was not speculative. *See, e.g., United States v. DeQuasie,* 373 F.3d 509, 520-21 (4th Cir. 2004)(warrant was based solely on an uncorroborated tip from an anonymous caller); *United States v. Holt*, 196 Fed. Appx. 213, 215-16 (4th Cir. 2006)(warrant provided no indicia that contraband would be found at the address listed, and did not establish a nexus between the defendant and the address). The warrant in this case was based on firm evidence that, prior to the incident, Michael Kennedy resided at the address to be searched, as well as direct knowledge that he had just committed a violent crime. Nonetheless, there is a questionable nexus between the Kennedy home and the shooting that occurred several miles away. Also, because Michael Kennedy was killed at the end of the shooting, probable cause could not be based upon a belief that he had fled the scene or stashed the weapons used in the crime at his home. Rather, the affidavit suggested a search for files and documents that may shed light on the incident.

The affidavit itself does specifically identify the place to be searched and the items to be seized, but is lacking in providing a real nexus to the crime committed.  The affidavit explains merely that such items were likely to be found at the home because "persons who commit crimes keep the fruits and instrumentalities of their crimes in their primary residences."  On its own, this is not a sufficient ground for probable cause to believe that contraband or evidence of a shooting will be found there.  Furthermore, the Court is troubled by the Government's explanation that "answers concerning accomplices or other coordinated attacks would have been delayed" if the search was not authorized. (Gov.'s Opp. at 10).  The affidavit is devoid of any indication that others may have been involved in the crime or indicating other attacks.  Thus, this assertion could not have been the basis for probable cause, leaving the Court to decide if the "nature of the item[s] and the normal inferences of where one would likely keep such evidence" were sufficient to support a showing of probable cause.  However, due to the applicability of the good faith exception, the Court need not resolve this issue.

2) <u>The Good Faith Exception</u>

Because the good faith exception applies to even a "subsequently invalidated" warrant, the Court may resolve Defendant's motion on its applicability alone, without addressing probable cause.  *See United States v. Bynum,* 293 F.3d 192, 195

(4th Cir. 2002).  Under the good faith exception, a court should not suppress the fruits of a search conducted under authority of a warrant unless "a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization."  *United States v. Leon,* 468 U.S. 897, 922 n. 23 (1984).  The Supreme Court has identified four situations in which an officer's reliance on a search warrant would not be objectively reasonable, holding that the exception would not apply when:

> (1) the magistrate was misled by information in an affidavit that the officer knew was false or would have known was false except for the officer's reckless disregard of the truth;
> (2) the magistrate acted as a rubber stamp for the officers and so "wholly abandoned" his detached and neutral "judicial role";
> (3) the warrant was based on an affidavit that was so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; or
> (4) the warrant was so facially deficient*,* by failing to particularize the place to be searched or the things to be seized-that the executing officers cannot reasonably presume it to be valid.

*United States v. Hyppolite,* 65 F.3d 1151, 1156 (4th Cir. 1995) (quoting *Leon,* 468 U.S. at 923).

It is clear and undisputed the warrant adequately described the place to be searched and things seized, and that magistrate did not abandon his judicial role and merely "rubber stamp" the warrant.  Rather, Defendant argues two bases for inapplicability: first, that misleading information was given to

-13-

the magistrate, and second, that the affidavit was so lacking in indicia of a nexus between the crime and the Kennedy home as to "render official belief in its existence entirely unreasonable."

### a) Misleading information

Defendant first argues that misleading information was provided to the magistrate because the affidavit states that Kennedy "lives" at the address and does not mention that he was killed during the commission of the crime.  However, Courts are permitted to consider "the totality of the information presented to the magistrate" including information presented outside the affidavit.  *United States v. Legg,* 18 F.3d 240, 243 (4th Cir. 1994).  In this instance, Detective Paul and the magistrate engaged in a discussion of the "on-going situation," and it was clear even from the affidavit that identification was found on Michael Kennedy's person after commission of the crime.  Considering these facts along with the affidavit, the Court finds that the omission of Kennedy's death in the affidavit did not constitute providing information that was misleading or that "the officer knew was false or would have known was false except for the officer's reckless disregard of the truth."  Thus, the Court does not find reliance upon the warrant to be unreasonable under the first *Leon* exception.

      b) <u>Indicia of Probable Cause</u>

Defendant next argues that the affidavit presented to the magistrate was "bare bones," and so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable. The Fourth Circuit has defined a "bare bones" affidavit as "one that contains wholly conclusory statements, which lack the facts and circumstances from which a magistrate can independently determine probable cause." *United States v. DeQuasie,* 373 F.3d 509, 521 (4th Cir. 2004). Defendant's basis for this argument is again that the affidavit provided no nexus between the Kennedy home and the underlying crime. Defendant points the Court to *United States v. Holt*, 196 Fed. Appx. 213, 215-16 (4th Cir. 2006) for guidance. In that case, the Fourth Circuit affirmed the district court's suppression of evidence in a drug investigation when the affidavit was based solely upon a tip from a confidential informant, and gave no indication that the suspect resided at the address or information linking ongoing criminal activity to the home searched. *Id.* The Fourth Circuit concluded that the affidavit was so lacking in indicia of probable cause that the exception would not apply, but further explained that an establishment of residence or ownership by the suspect could have yielded a different result. *Id. Holt* was thus entirely different from the instant action, in which the affidavit clearly

-15-

stated that Michael Kennedy's residence was the address to be searched, and this had been verified by identification on his person and independent information.  Furthermore, unlike *Holt,* the knowledge of criminal activity was not speculative in nature or based on a tip from a confidential informant.  Rather, the officers executing the warrant had first hand knowledge that Michael Kennedy had recently shot two of their colleagues.

The Court cannot conclude that the affidavit provided was "bare bones" or so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable. While the Court agrees that the four corners of the affidavit leaves a bit to be desired, it names Michael Kennedy, states his exact address and grounds for verification, describes the items to be searched and seized, and states a reason for the search. While the connection between the Kennedy home and the shooting of the officers is somewhat tenuous, the Court cannot conclude that it was so facially deficient as to preclude reasonable reliance upon in it.  *See United States v. Dickerson,* 166 F.3d 667, 694-95 (4th Cir. 1999).  Good faith reliance is further strengthened by the fact that the affidavit that was reviewed by a Commonwealth's Attorney prior to submission to the magistrate.

Therefore, the Court finds that it was entirely reasonable for the officers executing the warrant to presume its

validity.  Accordingly, the Court finds the good faith exception to apply in this instance, and Defendant's motion will be denied.

        3) <u>The May 19, 2006 Search</u>

Defendant only challenges the validity of the May 19, 2006 search to the extent that it could be tainted by the May 8, 2006 search.  Because this Court concludes that the May 8, 2006 search was constitutionally permissible under *Leon,* and has denied Defendant's motion to suppress with respect to that search, the Court will also deny Defendant's motion with respect to the May 19, 2006 search.

### IV.  Conclusion

For the foregoing reasons, the Court will deny Defendant's motions.  An appropriate Order will issue.


July 25, 2007                     _____/s/_____
Alexandria, Virginia              James C. Cacheris
                                   UNITED STATES DISTRICT COURT JUDGE