```
          IN THE UNITED STATES DISTRICT COURT FOR THE
                  EASTERN DISTRICT OF VIRGINIA

                        Alexandria Division

UNITED STATES OF AMERICA,    )
                             )
        v.                   )
                             )     1:07cr131(JCC)
BRIAN HAROLD KENNEDY,        )
                             )
     Defendant.              )
```

## M E M O R A N D U M   O P I N I O N

**(STATEMENT OF REASONS)**

This matter is before the Court for sentencing.

### I. Background

On August 7, 2007, Defendant Brian Harold Kennedy pled guilty to making a false statement in connection with the purchase of a firearm, in violation of 18 U.S.C. §§ 922(a)(6) and 924(a)(2), and to unlawful possession of firearms and ammunition by a prohibited person, in violation of 18 U.S.C. § 922(g)(3). In the plea agreement between Defendant and the government the parties stipulated and agreed to be bound by three guideline sentencing factors: (1) that Defendant has a base offense level of 20 pursuant to U.S.S.G. § 2K2.1(a)(4)(b) for the unlawful possession of a semiautomatic firearm capable of accepting a large capacity magazine; (2) that Defendant's base level should be increased by four levels pursuant to U.S.S.G. § 2K2.1(B)(1)(b) for the unlawful possession of twenty firearms; and (3) if Defendant qualifies for a two point decrease pursuant to U.S.S.G.

§ 3E1.1(a) and the offense level prior to the operation of that subsection is at least a level 16, the government will file a motion prior to sentencing for an additional one level decrease pursuant to U.S.S.G. § 3E1.1(b).

The pre-sentence report ("PSR") prepared for Defendant places him as a category I offender with a total offense level of 25, yielding a Guidelines range of 57 to 71 months. The PSR applies two enhancements: (1) the four point enhancement under Section 2K2.1(B)(1)(b), which was stipulated to in the plea agreement, and (2) a four point enhancement under Section 2K2.1(b)(6) for possessing a firearm with reason to believe it would be used or possessed in connection with another felony offense, which was not stipulated to in the plea agreement. The PSR also applies the two offense level acceptance of responsibility reduction under Section 3E1.1(a) and recognizes the government's intention to file for an additional one level reduction under Section 3E1.1(b).

In its Sentencing Memorandum, the Government does not seek the application of the Section 2K2.1(b)(6) enhancement that the PSR recommends. Instead, pursuant to the stipulated guideline factors in the plea agreement, the government asks the Court to find that, after applying the three level acceptance of responsibility reduction, Defendant has a total offense level of 21 and an applicable Guideline range of 37 to 46 months of

imprisonment.

Defendant attaches to his Motion to Strike a report by Chris Smith of the Community Services Board regarding Mr. Smith's evaluation of Defendant's son, Michael Kennedy, on May 5, 2006, three days prior to the shooting. Mr. Smith noted that Michael Kennedy told him that he accidentally shot his dog, that he was feeling remorse over that incident, and that all guns had since been removed from his house. Ex. B to Def.'s Mot. to Strike. Michael Kennedy admitted to experiencing hallucinations while he was in jail but said that at the time of his visit with Mr. Smith was not experiencing any. *Id.* Mr. Smith also noted that Michael Kennedy's family had been following through with a plan from the previous evening to help Michael, and that the family planned on "following up with Woodburn MH or contacting their insurance to see what provider could see them." *Id.* Mr. Smith concluded that Michael Kennedy "did not present an imminent danger to himself or others" and "seem[ed] able to care for himself." *Id.*

## II. Analysis

Defendant moves to strike the PSR on the ground that the inclusion of the Section 2K2.1(b)(6) enhancement in the PSR was a direct result of the government's breach of the plea agreement. Defendant argues that this breach requires that the current PSR be stricken, a new PSR be prepared by a different probation officer, and Defendant be sentenced by a different

3

district judge.  Defendant further claims that, notwithstanding his motion to strike, the application of the Section 2K2.1(b)(6) enhancement is improper and he should be given a sentence well below the 37 to 46 month range suggested by the government.  The Court will address each of these arguments in sequence.

### A. Motion to Strike the PSR

Defendant asserts that the government breached the plea agreement by seeking to have the probation officer apply the Section 2K2.1(b)(6) enhancement in the PSR.  Specifically, Defendant alleges that one of the lead police officers in this case, Detective Murphy,[1] when questioned by the probation officer as to whether it was reasonably foreseeable to Defendant that the guns he possessed would be used to commit other felonies, affirmed that it was, and that Detective Murphy provided this opinion knowing that it was an issue of importance in determining the Guideline range.  Defendant offers no evidence to support this claim; rather, he states that he will be able to prove it in an evidentiary hearing, which he is entitled to under the plea agreement in the event of an alleged breach.

"[W]hen a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be

---

[1] Although Defendant does not provide the officer's name, the government in its response states that "Detective Murphy" is the officer to whom Defendant refers.  Government's Resp. at 4.

fulfilled." *Santobello v. New York*, 404 U.S. 257, 262 (1971). When a prosecutor breaches a promise it has made in a plea bargain, re-sentencing is required "regardless of the [sentencing] judge's awareness of the government's 'real' position as indicated in the plea agreement." *United States v. Peglera*, 33 F.3d 412, 414 (4th Cir. 1994); *see also Santobello*, 404 U.S. at 262-63. In addition, numerous circuits have found that plea agreements regulate not only the government's conduct at sentencing hearings but also actions taken with respect to the pre-sentencing report. *See United States v. Normil*, 1997 WL 705373, at *4 (4th Cir. Nov. 13, 1997); *United States v. Goldfaden*, 959 F.2d 1324, 1327-28 (5th Cir. 1992); *United States v. Stemm*, 847 F.2d 636, 638 (10th Cir. 1988); *United States v. Cook*, 668 F.2d 317, 319-21 (7th Cir. 1982). If re-sentencing is ordered, it must occur in front of a different district judge than the original sentencing. *See Peglera*, 33 F.3d at 415.

Defendant relies in part on an unpublished decision in the Tenth Circuit, *United States v. Hamilton*, 1996 WL 153891 (10th Cir. Apr. 3, 1996), to support his argument. In *Hamilton*, the government promised as part of the plea agreement to stand mute on sentence. *Id.* at *1. After the probation officer made an initial determination that the defendant acted recklessly and that a certain offense level was appropriate, the government responded to the defendant's objections by concurring in the

5

probation officer's assessment and by providing further evidence of recklessness to the probation officer. *Id*. at *4. The sentencing court agreed with the probation officer's determination of recklessness and sentenced the defendant accordingly. *Id.* at *3. On appeal, the Tenth Circuit found that the government, by seeking to convince the probation officer that his initial finding of recklessness was correct, failed to abide by its promise to "stand mute" on sentencing, and the case was remanded to a different district judge for re-sentencing under the terms of the plea agreement. *Id.* at *5.

One noticeable difference between *Hamilton* and the underlying case is that here the Court – as will be explained in part II.B of this opinion – will not apply the enhancement recommended by the probation officer. Defendant argues that this Court was tainted by reading the PSR with the Section 2K2.1(b)(6) enhancement. The Court assures both parties that reading the PSR did not bias or prejudice the Court toward Defendant. Judges regularly read pre-sentence reports and reach conclusions after accepting and rejecting parts of those reports, and this does not taint their decisions in any way. Nevertheless, *Santobello* dictates that the government's breach of a promise made in the plea agreement and upon which the defendant relied in pleading guilty nullifies the plea regardless of whether the sentencing

court was influenced by it.  *See Santobello*, 404 U.S. at 262; *see also Peglera*, 33 F.3d at 414.

A second difference, however, lies in the fact that in *Hamilton*, as in *Santobello* and other cases cited by Defendant, it was the attorney for the government who breached the agreement. *See Hamilton*, 1996 WL 153891, at *4; *see also Santobello*, 404 U.S. at 259, 262 (ordering re-sentencing after prosecutor breached plea agreement by making a recommendation at sentencing); *United States v. McCartney*, 162 Fed. Appx. 228 (4th Cir. 2006)(ordering re-sentencing where prosecutor breached plea agreement by failing to recommend the low end of the Guideline range at sentencing); *United States v. Breedlove*, 35 Fed. Appx. 56 (4th Cir. 2002)(ordering re-sentencing after prosecutor breached plea agreement by making a recommendation at sentencing); *United States v. Normil*, 1997 WL 705373, at *4 (finding that the government attorney's disclosure of information to the probation officer and not to the defendants denied them the "benefit of their bargain").

Here, Defendant concedes that the Assistant United States Attorneys did not breach the agreement.  *See* Def.'s Mot. to Strike at 7.  Defendant could not have argued otherwise; the government in its Sentencing Memorandum specifically asks for a sentence within the 37 to 46 month range, in accordance with the guideline factors stipulated to in the plea agreement.  *See*

Government's Sentencing Mem. at 2.  Instead, Defendant accuses a police officer of committing the breach, but cites no authority to support its contention that a law enforcement officer can breach a plea agreement between a government attorney and a defendant represented by counsel.

Certainly, a plea agreement is an agreement between the defendant and the government as a whole, not simply individual United States Attorneys.  *See United States v. Harvey*, 791 F.2d 294, 303 (4th Cir. 1986)("It is the Government at large – not just specific United States Attorneys or United States "Districts" – that is bound by plea agreements negotiated by agents of Government.").  Nevertheless, Rule 11(c)(1) of the Federal Rules of Criminal Procedure states that:

> *An attorney for the government* and the defendant's attorney, or the defendant when proceeding pro se, may discuss and reach a plea agreement. . . . If the defendant pleads guilty . . . the plea agreement may specify that *an attorney for the government* will: . . . (B) recommend, or agree not to oppose the defendant's request, that a particular sentencing or sentencing range is appropriate or that a particular provision of the Sentencing Guidelines, or policy statement, or sentencing factor does or does not apply (such a recommendation or request does not bind the court).

Fed. R. Cr. P. 11(c)(1)(emphasis added).  Nowhere does Rule 11 permit a law enforcement officer to bind the government to a plea agreement.  More importantly, Rule 11 plainly states that any obligation undertaken by the government in a plea agreement is undertaken by the government attorney, not a law enforcement

8

officer.  In this case, the attorneys for the government and the defendant's attorney stipulated and agreed to be bound at sentencing by particular guideline factors, and the Assistant United States Attorneys have stood by that promise.

Assuming, however, that Defendant correctly asserts that law enforcement officers can breach plea agreements entered into by government attorneys,[2] the alleged conduct of Detective Murphy does not constitute a breach.  This conclusion is based in large part on the nature and function of probation officers and pre-sentence reports.  Federal Rule of Criminal Procedure 32 requires that a probation officer conduct a pre-sentence investigation and submit a report to the court prior to sentencing.  Fed. R. Cr. P. 32(c)(1).  Title 18 U.S.C. § 3553(a) requires the court to consider various sentencing factors before sentencing a defendant, and a purpose of the pre-sentence report is to aid the court in its consideration of those factors.  *See* Fed. R. Cr. P. 32(d)(1)-(2).  As part of providing this assistance, the probation officer has an "obligation to recommend what [they] believe[] to be a correct sentence to the court." *United States v. Woods*, 907 F.2d 1540, 1544 (5th Cir. 1990). Given this function, the Fourth Circuit has found that a

---

[2] It should be noted that, even if a federal law enforcement agent is capable of breaching a plea agreement between the federal government and a defendant, the Court is much more skeptical of the assertion that a state employee – such as Detective Murphy – is capable of doing so.

probation officer is "a neutral, information-gathering agent of the court, not an agent of the prosecution." *United States v. Johnson*, 935 F.2d 47, 49-50 (4th Cir. 1991).

Furthermore, in order for probation officers to provide informed recommendations, Congress has stated that "[n]o limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." 18 U.S.C. § 3661; *see also United States v. Espalin*, 350 F.3d 488, 496 (6th Cir. 2003)(finding that a district court "is best served by objective, accurate information from the probation officer," who "ought not be discouraged from setting forth such facts"); *United States v. Washington*, 146 F.3d 219, 223 (4th Cir. 1998)(upholding the broad scope of a probation officer's pre-sentence investigation where the officer had "sought out all available information that would prove relevant to the district court's sentencing proceeding, as it was his job to do"). As a result, a probation officer is entitled to conduct a broad inquiry into whether a particular sentencing factor applies.

In this case, the probation officer sought to determine whether Section 2K2.1(b)(6) of the Sentencing Guidelines applied to Defendant. Because under the terms of the Plea Agreement the probation officer was not bound by the guideline factors

stipulated to by the government and Defendant, this line of inquiry by the probation officer was not inappropriate.  *See* Plea Agreement at ¶ 5.  As part of her investigation, the probation officer asked Detective Murphy whether Defendant had a reason to believe that his firearms would be used or possessed in connection with another felony offense.  The Court agrees with the government's assessment that it would not have been proper for the government to have instructed Detective Murphy not to respond to this inquiry.  Such an instruction would have frustrated the probation officer's important duty as an information-gathering agent of the Court to seek out all possible information that might be relevant to Defendant's sentencing and to recommend to the Court what they believe is the appropriate sentence.  *See Washington*, 146 F.3d at 223; *Johnson*, 935 F.2d at 49-50; *Woods*, 907 F.2d at 1544.  Consequently, the Court will find that no breach of the plea agreement occurred and will deny Defendant's motion to strike the PSR.

### **B. Application of the Section 2K2.1(b)(6) enhancement**

Defendant argues that, notwithstanding his motion to strike, the Section 2K2.1(b)(6) enhancement should not be applied.  Notably, the government does not seek the application of that enhancement either.  *See* Government's Sentencing Mem. at 2.  Instead, the government asks the Court to find that the stipulated guideline factors in the plea agreement are

appropriate and to issue a sentence toward the high end of the 37 to 46 month applicable Guideline range.  The Court finds that the stipulated guideline factors in the plea agreement, including a base offense level of 20 pursuant to Section § 2K2.1(a)(4)(b), an increase of that level by four points pursuant to Section § 2K2.1(B)(1)(b), and a three level reduction pursuant to Section 3E1.1(a) and (b), are appropriate given the facts of this case.  This calculation yields a total offense level of 21 and an applicable Guideline range of 37 to 46 months.

Defendant also asks for a sentence well below the 37 to 46 month Guideline range.  The Court realizes that it may depart upwards or downwards from this Guideline range upon consideration of the factors in 18 U.S.C. 3553(a).  However, even if the Guidelines did not yield a range of 37 to 46 months of imprisonment, the Court finds in the alternative that thorough consideration of the 3553(a) sentencing factors requires the imposition of a sentence of 40 months.  Accordingly, Defendant's request for a sentence well below the 37 to 46 month range will be denied.

### III.  Conclusion

For the foregoing reasons, the Court will deny Defendant's Motion to Strike.  In sum, Defendant's total offense level is 21.  With a criminal history category of I, this results in a Guidelines range of 37 to 46 months, from which no downward

departure is warranted.  After thorough consideration of the relevant circumstances and 3553(a) factors, the Court finds that a sentence within the Guideline range of 40 months is necessary and appropriate.


November 8, 2007                        _____/s/_____
Alexandria, Virginia                            James C. Cacheris
                                        UNITED STATES DISTRICT COURT JUDGE